Thank you, Your Honor. My name is Arthur Weed. I'm the attorney for Roger Saesee. And I might begin by trying to narrow what I'm going to say by stating what the issue was that was certified for appeal here. And I'll read from the court's order. Did appellant's trial counsel render ineffective assistance of counsel in the state courts by promising in his opening statement to produce a defense witness and then failing to call that witness during the trial? Now, the court will recall that what this was was a confrontation between two rival street gangs. A gun was pulled and someone was killed. The police investigated and showed various witnesses pictures of who they thought it might be that had done it. And my client was identified in the pictures initially. But during the trial, no one pointed to him in court and said, that's the one who did the killing. So we have a circumstantial case where there was not overwhelming evidence of guilt. Now, the promise to call the witness was this, and I'm quoting from page 27. Let me ask you, we've read all this, so I don't think you really have to read it to us again. What Supreme Court case do you have directly on point that ineffective assistance of counsel can be premised on a broken promise in opening statement? Your Honor, as I admitted in my opening brief, there is no Supreme Court case. So if there is none, and again, I'm here on AEDPA. Right. And there is no case. How can I say that the court, California Supreme Court, or in this case, California Court of Appeal, unreasonably applied Supreme Court precedent, or unreasonably found facts they shouldn't have found? I'm having a tough time without any Supreme Court authority to come to that position. You can't quote me in my court, because we're not the Supreme Court. No. You've got to quote the Supreme Court, and it's got to be dead on so I can know they're talking about that. So what case am I going to look at? Your Honor, the Supreme Court case of Williams v. Taylor stated that the clearly established federal law, in this case involving ineffective assistance of counsel, is Strickland v. Washington. And as I stated at page 18 of the opening brief, Williams v. Taylor said, and I'll read it, the Strickland principles for deciding ineffective assistance claims are clearly established for purposes of AEDPA. I agree. All right. You don't even have to cite that to me. So I looked all over for a Supreme Court case that said it was ineffective assistance of counsel for giving a promise in opening statements you don't keep, and I couldn't find one. And I couldn't find one either, nor could I find one. So then it seems, end of story. If the California Court of Appeal couldn't find one either, and they made a reasonable determination that I can't say is clearly wrong, this case is over. I would suggest that's not the case. It isn't as simple as that, like many things. But doesn't it come down to our looking at the decision of the Court of Appeal as they applied Strickland and determining whether or not they applied Strickland contrary to Supreme Court authority? Doesn't it come down to that? Your Honor, I would respectfully suggest that the answer to that is no, because this Court's decision in Van Tran v. Lindsay, which I cited at page 2 of the reply brief, said at page 1154 of 212 Federal 3rd, and I'll quote, A state court's decision can be unreasonable within the meaning of ADPA so as to warrant federal habeas relief, even if the state court's decision addressed an issue not previously dealt with by the Supreme Court or the lower federal courts. But Strickland is the controlling case here. I don't understand your argument. Well, Strickland is the controlling case, and it deals with ineffective assistance of counsel, but it doesn't cover every possible way that counsel can be ineffective. There are bound to be innumerable ways, and so innumerable possible fact situations. Yeah, but the question here is the broken promise issue, and if the Court of Appeal concluded that this did not amount to a broken promise, it was only a couple of lines in a transcript of many, many pages, why that was not an unreasonable application of Strickland. Well, we can also look at that another way, which I've stated in my opening brief. But what he's focusing on is not if you can look at it another way, if it's unreasonable to look at it that way. I mean, that's the thing we've got to wrestle with. We can join you. We can even think you're right. But as long as they do a reasonable application, we can't undo them. That's correct. But I think we need to look at this in an abstract way, that there really are two considerations. The first is the gatekeeping provision of ADPA. Can Mr. Sasse get past that gatekeeping provision? And the answer is yes, he can, if there is clearly established federal law. Now, just because there isn't a U.S. Supreme Court case that deals directly with the failure to call a promised witness, that doesn't mean that there isn't clearly established federal law. What I'm suggesting is that there is, and it's very simple, it's Strickland versus Washington. Now, the next question is, okay, let's assume that there is this clearly established law. Was it unreasonable? Now, the state court has made an application or a determination as to the argument that was made before the state court, which was the question of whether the failure to call a witness that was promised during opening statement, is that unreasonable? All right, that's the second part of it. What I'm suggesting is we have gotten past the gatekeeping provision, and so now this court can consider the reasonableness of it. And I've cited numerous cases from… What are you going to do with the First Circuit case in Sleeper v. Spencer, which says right on the face, the Supreme Court has not identified the circumstances under which an ineffective assistance of counsel claim may be premised on a broken promise in an opening statement. What are you going to do with the Seventh Circuit case, Hampton, which says, breach of promise counsel made in opening statement was not so prejudicial that it would support relief in and of itself. I mean, those are two of our sister circuits who say, hey, we don't even agree with the idea, and the Supreme Court's not told us what to do. And now I'm trying to second-guess the California Supreme Court or Court of Appeal? Well, that, of course, is the function of this court. Once we get past the gatekeeping provision, which I agree with, you know, there has to be some means of prohibiting re-litigation or ongoing review. We have to have a concept of finality, and I think that's what ADPA is all about. Now, I may be confusing things here, but what I think you're talking about is whether or not, in fact, the failure to call a promised witness is ineffective assistance, and I think reasonable minds might differ with that. Well, if reasonable minds can differ, then the California Court of Appeal should be sustained, because if their reasonable mind says that, even if I differ, I must affirm. Isn't it a pretty deferential standard of review? Oh, it definitely is. My job is a very difficult job, as perhaps it should be. But I think we need to consider that it's a two-part analysis here, and the first part is whether or not there is any clearly established federal law, because the state appears to be arguing that there is not, and they're correct. But if there is not, then Mr. Sasse has no business being before this Court, because he hasn't gotten past the first hurdle. I'm suggesting that he has gotten past the first hurdle, and now he has to deal with what the Court seems to be wrestling with here, and that is, do we have ineffective assistance of counsel based on the facts in this case? Well, Counsel, I think you've pretty much teed up the issue. Perhaps you might want to reserve the rest of your time for rebuttal, and we'll hear from the other side. Thank you, Your Honor. Good morning, Your Honors. Kenneth Sekola of the California Attorney General's Office for the Warden. At the outset, I think I'd like to reconcile the various discussions going on about how the deference standard applies in this case. Strickland is the controlling Supreme Court precedent for all ineffective assistance of counsel claims. However, Your Honors are correct in pointing out that the Supreme Court has never dealt with a claim, specifically of promising to present certain testimony in opening statement and failing to deliver. The lack of that means that Strickland is a very general standard, and the Supreme Court has said that state courts under AEDPA have particularly wide latitude in applying very general standard. Okay, well, let's take the first reason the state court gave, was that the reference to the grandfather by counsel could only have benefited. Now, that seems crazy to me. You make a reference to the grandfather, and you don't call him. That can't be a benefit to your case, can it? Well, I think the state court was reasonable in reaching that conclusion here because what defense counsel said was less than a promise. Now, let's get to that question. But first, I'm pointing to one factor. The state court says it was a benefit to refer a witness that he didn't call. Isn't that crazy? No, Your Honor, I don't think so. Why? In this case, because based on counsel's words in his opening statement, he let it be known subtly that it was not certain that this witness was going to be called. He didn't use the words, we're going to be calling this witness, he will tell you. He had mentioned that the witness, the grandfather, was mad as hell that Brianna, his granddaughter, the alibi witness, had told the police, had come to the police, and the grandfather was mad as hell that his granddaughter had been subpoenaed there, and he used conditional language like, I'm counting on him to tell the truth. These are the key words. Let's focus on that. I'm counting on him to tell the truth and corroborate what the girl said. Now, you can express a promise in various ways, but if I say to you, I'm counting on you to make a good argument, I think there's an indication that I'm relying on you. I think in the context here, where he's just established that the grandfather is very angry about his family being involved in this case and quote-unquote mad as hell that his granddaughter has been subpoenaed, and after he has just told the court that the granddaughter's right now in Indiana, and that he's not even sure they're going to be bringing him out, but they hope to, that in that context, the statement, I'm counting on him, is not a flat-out promise to bring in the grandfather. I think that defense counsel was couching everything here in terms of the alibi witness or two potential alibi witnesses as somewhat iffy, and the court of appeals said, given the context of that case, that it was not incompetent to plant that seed, and that it was not, we're talking about the prejudice analysis of course right now, it was not prejudicial in part because it was not couched as a flat-out promise. It was somewhat conditional. There are other factors that affect the prejudice analysis too, and I'd like to address those. One more question. Certainly. Not exactly, but we know now that counsel has been disbarred, and we know that at the time of this trial, he was on probation. He had been told to shape up, and at the end of the probationary period, he had not shaped up. So should we think about that at all, and thinking whether this is effective assistance? We had a very dubious lawyer representing the defendant. No, Your Honor. This is on the issue of the first prong of Strickland incompetence. Under Strickland, we looked at the specific acts or omissions alleged in this case, and if we are analyzing the incompetency prong, which I note was not addressed in the briefing, the petitioner would have to show that counsel had no objective, no reasonable tactical basis for making that statement about the grandfather in his opening statement, and he can't possibly prove that because we have no record on it. He may have had good reasons for it. At the point he made his opening statement, he may well have thought that the grandfather was going to testify. His investigator may have talked to him. He brought this claim on direct appeal in state court and only on direct appeal, so we really don't know whether he had a valid tactical reason or not, and he has to show, in order to show incompetence, that counsel lacked a valid tactical reason. In effect, the magistrate court here, in making this determination, identified several reasons why the grandfather's failure to testify would not harm the defendant, correct? Correct. Getting back to the prejudice prong, yes. There was the context in the opening argument. This was just a rather small part. I should say opening statement. This was just a rather small part of the opening statement. It was about seven sentences out of four pages, and counsel talked about a lot of things and, frankly, stressed a lot of other things in his opening statement. He stressed, defense counsel stressed, the reasonable doubt standard. He talked a lot about what he expected to show about the unreliability and lack of credibility for the prosecution's key witness, accomplice witness, Benny Garza. He talked a lot about the alibi witness, Breanne, Mr. Sacy's girlfriend, that he was hoping that she would be appearing and coming out from Indiana and corroborating the story that Mr. Sacy was with her at the time of the murder. He talked about cross-racial identification and the difficulties in cross-racial identification. And only in addition to all those things did he utter seven sentences about the grandfather, that he was counting on the grandfather, this angry grandfather, to corroborate Breanne's statement about being with the defendant. I was interested in reading the California Court of Appeals opinion. There's a jury instruction that was given, and the jury instruction was neither side is required to call all witnesses who may have information about the case? That is correct. Is that a normal California instruction, or was that given effectively to try to remedy this particular problem? I believe that that is a pattern instruction. Anything further, counsel? Well, since the issue of incompetent performance has been brought up, I would like to make one more point about that. There is a hint in the record of what might have happened here, and I noticed the defense counsel made an effort to get it out during the examination of the witness, Cindy Seichow. She was the sister of Breanne, the sister of the alibi witness, and she also lived with the grandfather. Defense counsel asked, where do you live? She said, I live with my grandfather, and he gave his name. He asked, do you know where she is now? This witness, Cindy, testified that he was out of town. I think here that he was trying to undo any potential damage by laying a suggestion that the grandfather was avoiding them. Now, the record isn't developed on that, and that's another reason he can't possibly show incompetent performance in a case that he only brought on direct appeal in state court. But it indicates to me that he was aware of a potential issue of what he had said in opening statement and that he was trying to plant something in the jury's mind and that, of course, we can't go beyond the record here because this was only on direct appeal, but perhaps that is what happened. And that's at 8 excerpts of record, volume 8, page 806. Unless the court has any further questions, I'll conclude with that. No further questions, counsel. Mr. Weed, do you have some reserve time? Yes, very briefly, Your Honor. I would like to respectfully concur with what Judge Noonan said about how it's crazy for the court of appeal to say that the defendant in this case could have benefited from the statement by the attorney. So you're also saying then not only is the court of appeal crazy, but the magistrate court is crazy? Well, I wouldn't use those terms, but I would use the term wrong. I mean, it didn't seem to me that I could get too much carried away there about who was crazy when I had the California Court of Appeals saying one thing and then I had the magistrate court looking at the same thing once again and listed several reasons why the California Court of Appeals was correct. Well, all I would say, and just this one last thing, that at page 2 of my reply brief I cited the case of Williams v. Woodford, which is a district court case that was authored by Chief Judge Kaczynski, and I would simply say what Judge Kaczynski said in a situation like this. The jury will draw negative inferences from the unexplained absence of promise to testimony, and these inferences will fill any gaps that might otherwise exist in the prosecution's case. That's all I have. Thank you, Your Honor. Very well. Thank you very much, Mr. Weave. The case just argued will be submitted for decision.
judges: Noonan, O'scannlain, Smith